UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CR-80140-ROSENBERG

UNITED STATES OF AMERICA,

v.

VICTOR VAN VICKERY
    Defendants.
_____/

**VICTOR VAN VICKERY'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT, SECOND SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD DEPARTURE AND VARIANCE, AND RECOMMENDATION FOR THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM**

Defendant Victor Van Vickery submits his Objections to the Presentence Investigation Report (PSR), Second Sentencing Memorandum and Request for a Downward Departure and Variance. For the reasons explained below, the Court should use its authority to impose a sentence that falls below the advisory guidelines range and includes a recommendation for Mr. Vickery's participation in the Bureau of Prisons Residential Drug Abuse Treatment Program (RDAP).

### I. INTRODUCTION:

On October 27, 2023, Mr. Vickery pled guilty to a one-count Information charging him with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Sentencing is pending. Mr. Vickery has signed both a written Plea Agreement and Factual Proffer. He has been on bond since his surrender date, March 13, 2023.

As to the offense, Mr. Vickery has accepted responsibility for committing health care fraud. The parties have agreed he is responsible for the $10,526,803, paid by Medicare based on the false and fraudulent claims submitted. The parties have also agreed that his acceptance of responsibility was both timely and complete.

Mr. Vickery is a 35-year-old man with a college education. He is a father to a one-year-old daughter. He has strong support from his immediate family and girlfriend. He was diagnosed with attention deficit hyperactivity disorder as a child. His battle with drug addiction began soon after he was prescribed Adderall at the age of 16 to manage his hyperactivity and inability to focus. He is a hardworking entrepreneur who routinely develops new business ideas and attempts to bring them to fruition. With that said, we believe this filing will identify sentencing factors under 18 U.S.C. § 3553, related to Mr. Vickery's personal history and characteristics, which will warrant a sentence below the advisory guideline range.

## II. OBJECTIONS TO PSR:

a. As to **paragraphs 28, 38 and 101** of the PSR, Mr. Vickery objects to the failure to recommend a three-level reduction for his acceptance of responsibility, as agreed to and contemplated by the parties in the written plea agreement. In making this objection, Mr. Vickery admits that although he tested negative for alcohol and illegal substances on dozens of occasions since being placed on pretrial release in 2018 (for his state offense), he relapsed and used cocaine in August of 2023. Just prior to the cocaine use, he consumed alcohol in July 2023. To clarify, during that time period, Mr. Vickery was not being drug tested as a condition of his federal pretrial release. On October 18, 2023, Mr. Vickery discussed the earlier positive state drug test with a federal pretrial officer and acknowledged the August 2023 use of cocaine. Mr. Vickery specifically wants to clarify a comment contained in paragraph 28 of the PSR wherein it makes it appear he had multiple positive cocaine drug tests. He did not. On October 18, 2023, Mr. Vickery simply admitted to his one-time relapse in August 2023. Following his admission on October 18, 2023, Mr. Vickery was referred for a substance abuse evaluation and drug testing was initiated as part of his federal pretrial release. His first drug test with the federal probation office took place on

October 19, 2023. He tested positive for marijuana, a substance he was permitted to use as a condition of his state pretrial release due to possession of a valid medical marijuana permit. All said, Mr. Vickery welcomed the substance abuse evaluation referral and understands he needs to commit to long-term substance abuse treatment to achieve his goal of sobriety. Mr. Vickery has been attending weekly substance abuse treatment sessions as directed. He is now drug tested up to twice a week and these results continue to be negative. Mr. Vickery believes that with all the affirmative steps he has taken since his arrest, the PSR should be amended to grant him this significant reduction, consistent with the written plea agreement.

As this Court is aware, the Eleventh Circuit has been consistent in allowing district judges great deference on this issue. See *United States v. Pace,* 17 F. 3d 341 (11th Cir. 1994) and *United States v. Hromada,* 49 F. 3d 685 (11th Cir. 1995). Indeed, § 3E1.1, comment. (n.5), states that "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." For these reasons, Mr. Vickery asks this Court to determine that he has accepted responsibility for his participation in this offense and amend paragraphs 28 and 38 of the PSR to reflect a three-level reduction.

It is important to note that counsel discussed this objection with Assistant United States Attorney Andrea Savdie, who expressed no objection to Mr. Vickery receiving a three-level reduction for acceptance of responsibility, pursuant to § 3E1.1.

Consistent with the above objection, the defendant asks that the Total Offense Level be amended to a 29. Further, paragraph 99 of the PSR should be amended to reflect a total offense level 29, criminal history category III, for an advisory guideline range of 108 to 120 months and paragraph 108 be amended to reflect a fine range of $30,000 to $300,000.

b. As to **paragraph 77 of the PSR**, Mr. Vickery wishes to clarify he began using cocaine in approximately 2008, not 2018. He believes the reference to 2018 is a typographical error.

c. As to **paragraph 114 of the PSR**, Mr. Vickery objects to the failure to identify any factors that may warrant a departure or variance from the advisory guideline range in this case beyond that of § 5K1.1 and/or 18 U.S.C. § 3553(e). In support of said request, Mr. Vickery respectfully requests this Court consider his personal history and personal characteristics as discussed in the forthcoming Sentencing Memorandum.

d. As to **paragraph 136 of the PSR**, Mr. Vickery asks the recommended special condition of Anger Control/Domestic Violence Treatment be deleted. Mr. Vickery has no criminal convictions for conduct involving violence. He understands that his pending criminal cases appear egregious, but those charges are over seven years old, and remain contested, which leaves him in a position of being unable to comment further.

### III. SENTENCING MEMORANDUM

Analysis of multiple factors is critical to arriving at an appropriate sentence for Mr. Vickery. It is necessary to understand his personal history and characteristics, the scope of the overall conspiracy, and his extensive and ongoing cooperation. Consistent with the joint stipulation detailed in the plea agreement, Mr. Vickery is permitted only to seek a downward departure or variance based on his personal history and characteristics and the cooperation he has provided to the government in support of a § 5K1.1 reduction.

This Court is aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines, *U.S. v. Booker,* 543 U.S. 220 (2005). However, the Supreme Court has since gone further in its recent decision in *Nelson v. United States,* 129 S. Ct. 890 (2009), where the court reiterated what it said in *Rita v. United States,* 551 U.S. 338 (2007), that a sentencing

court may not presume that a sentence within the applicable guideline range is reasonable but added "the Guidelines are not only *not mandatory* on sentencing courts, they are also not to be *presumed reasonable."* To that end, Mr. Vickery offers the following:

*History and Characteristics of Defendant:*

1. **Victor Van Vickery's Personal and Family History:** Mr. Vickery is a 35-year-old man with a college education. He has strong support from his immediate family and girlfriend. Mr. Vickery's father, Charles, is 80 years old and is seriously ill from lung cancer. Mr. Vickery is a significant source of support for his parents.

2. **Victor Van Vickery has a Long History of Mental Health and Substance Abuse:** As a child, Mr. Vickery always struggled with hyperactivity and had difficulty focusing. At the age of 16, he was diagnosed with attention deficit disorder (ADD). He recalls being prescribed Adderall at the age of 16 so that he could focus on schoolwork. The Adderall helped Mr. Vickery focus in school but made him suffer from anxiety and insomnia. Mr. Vickery took the medication until he graduated from high school but discontinued its use thereafter. He resumed use of the Adderall when he returned to college in approximately 2018. He again experienced insomnia and anxiety. To counter these effects, he was prescribed another medication, Klonopin.

Around the same time frame when he was originally placed on Adderall, at age 16, Mr. Vickery began to abuse illicit substances. At age 16, he began to abuse marijuana and alcohol. During college, he abused hallucinogenic mushrooms in addition to marijuana and alcohol. At age 20, he began to abuse cocaine. At 23, he began to abuse prescription narcotic pain medication. Around this age, following an automobile accident, Mr. Vickery was prescribed Roxicodone, a narcotic pain medication. He became heavily addicted to the medication and by the following year, he transitioned to abusing heroin. The heroin abuse became a daily occurrence and was snorted or

injected intravenously. At various times throughout his entire adult life, Mr. Vickery has abused drugs, sometimes more than one, daily. In 2015, Mr. Vickery was incarcerated for approximately eight months and was able to get clean from all drugs. Upon his release from jail, he resumed use of marijuana but was able to stay clear of the cocaine and heroin. Later, he further relapsed by using cocaine.

For an extended period, Mr. Vickery has been on pretrial release for his pending state cases. As a condition of his state pretrial release, he has been drug tested on a weekly basis for years. As previously acknowledged, Mr. Vickery briefly relapsed by using alcohol and cocaine as evidenced by urinalysis screens collected in July and September 2023. Prior to his relapse, Mr. Vickery was not in a substance abuse treatment program. On October 18, 2023, the U.S. Probation Officer referred Mr. Vickery for a substance abuse evaluation at Compass Health System. The Compass Health evaluation diagnosed Mr. Vickery with drug dependance in sustained remission and an adjustment disorder with anxiety. Mr. Vickery now participates in weekly treatment sessions and is drug tested up to twice a week. A review of Mr. Vickery's criminal history confirms the impact substance abuse has taken on his life. Many of his prior arrests and all but one of his criminal history points are related to drug activity. He understands that his participation in a long-term substance abuse treatment program is necessary for his goal of lifelong sobriety. He respectfully requests that the Court recommend his placement in the Bureau of Prisons Residential Drug Abuse Treatment Program.

**3. Victor Van Vickery's Family Ties and Responsibilities:** As previously discussed, Mr. Vickery frequently provides care and assistance for his parents. His father is 80 years old and is seriously ill with lung cancer. Mr. Vickery also has a one-year-old daughter, Victoria Vickery. While Victoria primarily resides with her mother, Mr. Vickery is a source of consistent and vital

financial support.

Mr. Vickery asks that his personal history and characteristics, which include his caregiving responsibilities, be considered as sentencing factors under 18 U.S.C. § 3553(a)(1) in fashioning a below guidelines sentence in his case. Counsel will have further remarks at sentencing.

### *Mr. Vickery's Conduct was a Small Portion of a Much Bigger Scheme.*

For clarification purposes, Mr. Vickery points out that, on the same day his PSI was disclosed, an Indictment was filed against Robert Leon Smith, III in 23-cr-80211-KAM, SD/FL. This is a related matter as Mr. Smith is the individual referred to as UCC1 in Mr. Vickery's PSI.

Between August 2018 and February 2021, Victor and his coconspirator, Robert Leon Smith, III, were involved, in varying degrees, in a scheme in which individuals who operated offshore call centers that used high-pressure and deceptive tactics to get Medicare beneficiaries to accept medically unnecessary durable medical equipment (DME) and prescription drugs received kickbacks and bribes. The scheme also involved purchased doctors' orders for DME and prescription drugs from purported telemedicine companies, knowing doctors had no valid physician-patient relationship. Some of these orders were used to bill Medicare for medically unnecessary DME. Doctors' orders to other DME suppliers, pharmacies, and marketers in exchange for kickbacks and bribes were sold. Related to the dates of Mr. Vickery's involvement in the scheme, these actions resulted in at least $23,527,581 in false and fraudulent claims from which at least $10,526,803 was paid out.

Consistent with the joint stipulation detailed in the plea agreement, Mr. Vickery does not seek to minimize his criminal conduct, nor does he seek a downward departure or variance based on disparity in sentencing. He clarifies that he has primarily involved in the marketing side of the venture while, Mr. Smith handled the day-to-day operations. Further, Mr. Vickery does wish to

take a moment to highlight the gross disparity among coconspirators considering the Court's responsibility to avoid undue disparity between similarly situated defendants.

Mr. Vickery's case falls under the umbrella of a nationwide law enforcement operation dubbed "Operation Brace Yourself." It is hard to imagine a greater undue disparity between what the PSI recommends for Mr. Vickery and what the United States has sought for the leader and other participants in Operation Brace Yourself. The Department of Justice identified Herb Kimble, a resident of the Philippines, as the architect of Operation Brace Yourself, which is one of the largest healthcare fraud schemes in the history of the United States. Mr. Kimble is charged in *United States v. Kimble*, 19-cr-277, in the District of South Carolina. In an April 9, 2019, press release, the Department of Justice reported that Operation Brace Yourself included 130 companies that submitted over $1.7 billion in claims and received over $900 million in payments. In an October 2022 filing in Mr. Kimble's case, the United States reported that Mr. Kimble's scheme included approximately 80 defendants across 21 judicial districts. The United States attributed $385,781,940.75 in restitution to Mr. Kimble. Notably, the United States is recommending a sentence of probation for Mr. Kimble, who remains pending sentencing.

Mr. Kimble's call center, located in the Philippines, provided services for dozens upon dozens of DME Providers, selling thousands of DOs per week. Mr. Kimble's call centers solicited the patients, performed the intake, sold, and upsold the patient on medical equipment, contracted with telemedicine companies to provide medical consultations that wound up being fraudulent, and then sold the completed package to DME Providers so they could bill Medicare. Mr. Kimble also opened several of his own DME provider companies under strawmen. He even opened a company to dropship the actual braces so that he could make money on every aspect of the fraud. Mr. Kimble benefitted to the tune of hundreds of millions of dollars from Medicare. Rather than

being indicted, Mr. Kimble was allowed to plead guilty to an Information charging him with Conspiracy to Commit Health Care Fraud, Conspiracy to Defraud the Government, and Violation of the Anti-Kickback Statute, in violation of 18 U.S.C. §371 (a five-year statutory maximum penalty). The plea also allows Mr. Kimble to avoid any term of incarceration and provides that his term of release will terminate upon his payment of at least $40,000,000 in restitution. Said restitution is to be paid at the time of Mr. Kimble's sentencing. Therefore, Mr. Kimble will likely serve no time in prison, and no time on community supervision. While Mr. Kimble has not yet been sentenced, and it is unclear if the District Court has accepted the plea, the United States has filed a sentencing memorandum asking the District Court to accept the plea agreement, which recommends a sentence of probation. While Mr. Kimble's $40 million payment is unquestionably large, it is a small amount of the profit that Mr. Kimble made in running the scheme.

It is also important to consider how participants in Operation Brace Yourself are treated[1]. A small sample follows. In *United States v. Brandon Lantz*, 20-80065-cr-RS (SDFL): Lantz was a partner in "multiple" DME supply companies which obtained DOs from Herb Kimble. Lantz's forfeiture was $18,888,634 and the restitution in his case was approximately $60 million. Mr. Lantz' guideline range for his participation was 210-260 months but the range was capped by the offense maximum of 10 years. (20-80065-cr-RS D.E. 46). The Court imposed a significant downward variance to 30 months in prison. (20-80065-cr-RS D.E. 53).

The same is true for Lantz's partner. In *United States v. Brian Humphrey*, 20-80065-Cr-RS (SDFL): Humphrey plead to 18 U.S.C. §1349 and had an offense level of 37 (20-80065-cr-RS D.E. 28). His forfeiture amount was $6,554,102 and his restitution amount was $48,180,426. The

---

[1] This list of cases were originally assembled as part of a sentencing memorandum submitted in United States v Davidovic, 21-cr-60253, SDFL.

Court imposed a downward variance to 12 months (20-80065-cr-RS D.E. 52) in prison (a 198-month variance).

In *United States v. John Agbi*, No. 19-CR-80170-RKA (SDFL): The Court downward varied from a guideline range of 78 to 97 months imprisonment to 18 months in prison (further reduced to 8 months because of a Rule 35 reduction) and three years of supervised release. (19-cr-80170-RKA D.E. 39, 45). Agbi was a medical doctor who signed unnecessary prescriptions for DME. The restitution in Dr. Agbi's case is nearly $40 million.

Similar sentences have been issued in other Districts. In *United States v. Esther Diller*, 19-cr-00558-MAK (EDPA): Ms. Diller was the owner of three (3) DME providers who purchased completed DOs from Herb Kimble, (which resulted in an intended loss of $7,705,168, net benefit conferred of approximately $4,003,248 and a forfeiture of personal proceeds of $1,041,302 (19-cr-00558-MAK D.E. 1). She received 3 years of probation with the first sixty (60) days spent on home confinement. (19-cr-00558-MAK (EDPA) D.E. 42)

The disparity is not just evident through the *types of sentences* individuals involved in Operation Brace Yourself have received, but also in the disparity of the *charging decisions* made by the United States, which ultimately resulted in disparity in sentences. For example, in *United States v. Sean Aaronson*, 20-cr-60106-AHS (SDFL): the manager of a call center that sold *and generated* DOs and who himself owned a DME Provider, was able to plea to 18 USC §371 (which carries a maximum sentence of 5 years) and his amount of loss was attributed to only the $1,127,000 he personally made. Mr. Aaronson was sentenced to time served (one day) plus three years supervised release with the first year on home detention and no electronic monitoring (20-cr-60106-AHS (SDFL) D.E. 42).

The charging decisions and the application of the "benefit conferred" as the amount of loss

is prevalent, especially among the higher-level conspirators. On October 5, 2021, the United States and seven defendants including Herb Kimble, filed a Joint Motion to Apply Correct Sentencing Guidelines and Properly Calculate Loss Amount, (19-cr-00277-JFA (DSC) D.E. 46). The parties' argument was that the loss amount should "correspond to the *benefit* that each Defendant received from his role and involvement in the kickback scheme at issue." To further reinforce this position, the United States chose to file an Amended Information in each of those cases, such that the defendants' charging documents only listed the benefit conferred and made no reference to the intended loss or the fraud. One case in point is ***United States v. Steven Lowell***, 20-cr-00583-JFA (DSC): Steven Lowell owned two DME Providers that purchased completed DOs from Herb Kimble, *plus* he owned Bentley Medical Products, which drop shipped the DME products on behalf of Kimble's clients. On February 5, 2021, the United States Probation Office disclosed Mr. Lowell's initial PSR, which applied U.S.S.G. § 2B1.1 and stated that Mr. Lowell's Offense Level was 30, with a guideline imprisonment range more than the 60-month statutory maximum. (20-cr-00583-JFA D.E. 67). Subsequently, the Government amended Mr. Lowell's Information so that he was responsible only for the amount he personally benefitted, and he was sentenced to 12 months and one day (D.E. 73).

Mr. Lowell's partner in the two DME Providers and Bentley Medical Supply was Jeff Charnock. In ***United States v. Jeff Charnock***, 20-cr-00583-JFA (DSC): Mr. Charnock received a deferred prosecution agreement on February 1, 2021, which he satisfied, and the Government dismissed the charges against him on March 28, 2022 (20-cr-00583-JFA D.E. 65).

In ***United States v. David Tsui***, 20-cr-00591-JFA (DSC): Mr. Tsui was the owner of Comfortland, the drop ship brace vendor used by DME Providers before Mr. Kimble had them shift to Bentley. Mr. Tsui was charged with receiving kickbacks from Mr. Kimble for the referral

of clients. Mr. Tsui, several years prior, was previously convicted of healthcare fraud against the US Department of Health and Human Services/CMS (07-cr-00430-JAB (MDNC)). The Government also amended Mr. Tsui's information to only charge him with a violation of 18 USC §371 and the amount of benefit conferred (which still exceeded $1 million dollars). He was sentenced to fifteen months (20-cr-00591-JFA D.E. 72).

### *Mr. Vickery's Extensive Cooperation Merits a Very Significant Reduction.*

Mr. Vickery has provided extensive cooperation to the United States. His cooperation, which will be detailed by the government, has been comprehensive and reliable. The cooperation remains ongoing and speaks to Victor's remorse and determination to right his wrongs.

From the onset and continuing to the present, Mr. Vickery has committed to providing the government with assistance whenever so requested. He has participated in multiple debriefings, produced voice recordings, texts and emails. In addition to formal meetings, he has made himself available to answer questions, explain technical concepts, and otherwise assist however possible. Mr. Vickery has not yet testified at any trial, but he is ready and willing to do so. Mr. Vickery believes the government will elaborate at sentencing regarding the degree of assistance provided to date.

At the time of this writing, the amount of reduction being sought by the government is unconfirmed. While Victor is confident that the United States will make a fair proposal, it should be noted that the Court is of course free to grant whatever reduction it deems fit once a motion is filed under Rule 5K1.1, considering the full nature of the cooperation and other relevant factors. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008) ("[A]fter the government has made a motion for downward departure pursuant to [Rule 5K1.1], the government has no control over whether and to what extent the district court will depart from the Guidelines."); *see also United*

States v. Hayes, 762 F.3d 1300, 1305, 1307 (11th Cir. 2014) (approving district court's decision to grant the government's 5K1.1 motion and "depart[] *more than* the government had recommended" (emphasis added)). With that in mind, a substantial reduction is appropriate.

### Letters about Victor Van Vickery

Attached to this memorandum are letters from people who know Victor Van Vickery the best and are a true representation of who he is and who he has been to those closest to him.

### Request for United States Probation

The undersigned requests United States Probation provide the Court with a comprehensive update from Compass Health regarding the pretrial conditions Mr. Vickery has been engaged and in compliance with.

### Conclusion

Mr. Vickery accepts responsibility for his conduct and is remorseful. After applying the three-level acceptance of responsibility reduction, Victor's properly computed offense level is a 29, which combined with his criminal history, results in an advisory guideline range of 108 to 120 months' imprisonment. From the 108-month threshold, Mr. Vickery seeks a departure and/or variance based on his personal history or characteristics as previously discussed. Thereafter, the Court should apply the government's expected motion under §5K1.1. Finally, Mr. Vickery asks that the Court recommend to the Bureau of Prisons that he participate in the 500-hour Residential Drug Abuse Program.

Dated: February 15th, 2024          Respectfully Submitted,

The Law Offices of Joshua D. Rydell
Attorney for Defendant
111 SW 6th Street
Fort Lauderdale, Florida 33301

Phone  (954) 779-1711  
Fax     (954) 779-1714

By: /s/ Joshua Rydell
   Joshua D. Rydell
   Florida Bar No: 28372

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk using CM/ECF and furnished to all parties of record registered with the CM/ECF system on this 15th day of February, 2024.

The Law Offices of Joshua D. Rydell  
Attorney for Defendant  
111 SW 6th Street  
Fort Lauderdale, Florida 33301  
Phone  (954) 779-1711  
Fax     (954) 779-1714

By: /s/ Joshua Rydell
   Joshua D. Rydell
   Florida Bar No: 28372